UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY HANSON,<br><br>　　　Plaintiff,<br><br>v.<br><br>WORLD ACCEPTANCE CORPORATION and WORLD FINANCE CORPORATION OF ILLINOIS,<br><br>　　　Defendants. | Case No.: 21-5554<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

Now comes the Plaintiff, TIMOTHY HANSON ("Plaintiff"), by and through his attorneys, and for his Complaint against the Defendants, WORLD ACCEPTANCE CORPORATION and WORLD FINANCE CORPORATION OF ILLINOIS ("Defendant"), Plaintiff alleges and states as follows:

### PRELIMINARY STATEMENT

1. This is a complaint for damages, equitable relief, and injunctive relief for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., as amended, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Emergency Paid Sick Leave Act of the Families First Coronavirus Response Act of 2020, § 5101 *et seq.*, H.R. 2601, 116 Cong. (2020) ("FFCRA").

### JURISDICTION AND VENUE

2. All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

      a.      Plaintiff filed a Charge of Discrimination, number 440-2021-05306, with the Equal Employment Opportunity Commission ("EEOC") on July 16, 2021.

      b.      The EEOC issued a Notice of Right to Sue to Plaintiff for said charge on July 27, 2021.

3.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

4.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5.     Plaintiff is an individual who at all relevant times resided in Rockford, Illinois.

6.     On information and belief, Defendant WORLD ACCEPTANCE CORPORATION is a corporation of the State of South Carolina, which is not registered with the Secretary of State to do business in Illinois, and which has its principal place of business in Greenville, South Carolina.

7.     On information and belief, Defendant WORLD FINANCE CORPORATION OF ILLINOIS is a corporation of the State of Illinois, which has its principal place of business in Greenville, South Carolina.

8.     Plaintiff and Defendants are "persons" as defined in 42 U.S.C. § 12111(7), as they meet the definition of a person as defined in 42 U.S.C. § 2000e(a), in that they both "include[] one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations…."

9. Defendants are both "employers" as defined in 42 U.S.C. § 12111(5)(A), as they are both persons engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. Defendants are both "employers" as defined in 29 U.S.C. § 2611(4)(A), as they are both persons engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

11. At all relevant times, Plaintiff was an "employee" as defined in 42 U.S.C. § 12111(4), as he is an individual who was employed by the Defendants.

12. At all relevant times, Plaintiff was an "eligible employee" as defined in 29 U.S.C. § 2611(2)(A).

13. At all relevant times, Plaintiff was a "qualified individual" as defined in 42 U.S.C. § 12111(8), as he was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position that he held.

14. At all relevant times, Defendants were "covered employers" as defined by the FFCRA.

15. At all relevant times, Plaintiff was an "eligible employee" of Defendants as defined by the FFCRA.

**BACKGROUND FACTS**

16. Plaintiff began his employment with Defendants on or about January 23, 2017.

17. Plaintiff's most recent position with Defendant was as an Account Specialist.

18. During his employment Plaintiff performed the duties of his position to all legitimate expectations.

19. On April 1, 2020, the Families First Coronavirus Response Act ("FFCRA") became effective for all eligible employees.

20. The FFCRA, through the Emergency Paid Sick Leave Act ("EPSLA"), provides eligible employees up to two weeks (80 hours) of paid leave for qualifying reasons expressed in the Act.

21. Section 5102(a)(3) of the FFCRA defines one qualifying reason for paid sick leave as an employee experiencing symptoms of COVID-19 and seeking medical diagnosis from a health care provider.

22. Section 5102(a)(2) of the FFCRA defines another qualifying reason for paid sick leave as an employee who is subject to a self-quarantine order from a health care provider.

23. Section 5103(a) of the FFCRA requires covered employers to notify their employees of their rights to take paid sick leave under the FFCRA.

24. On or about September 21, 2020, Plaintiff began feeling ill.

25. Plaintiff notified his manager, Harmony Naujokas ("Naujokas") that he was not feeling well that day. Plaintiff took his temperature, which was 100.1 degrees at the time.

26. Naujokas did not tell Plaintiff to stay home, so Plaintiff took some ibuprofen and went to work. Plaintiff mentioned to Naujokas on multiple occasions throughout the day that he was running a fever.

27. On or about September 22, 2020, Plaintiff went to work and again was feeling sick. Plaintiff notified Naujokas, who did not direct Plaintiff to go home.

28. On or about September 23, 2020, Plaintiff woke up feeling noticeably worse and messaged Naujokas to tell her that he would be unable to work that day. Plaintiff further notified Naujokas that he had a video call scheduled with his doctor and would need to get a COVID-19

test.

29. When Naujokas expressed disappointment, Plaintiff told her he would try to take some medicine and attempt to make it in for work.

30. Roughly one hour later, Plaintiff's symptoms worsened. Plaintiff could barely stand up and was experiencing severe chills.

31. Plaintiff notified Naujokas that he could not make it to work. Plaintiff further stated that he was able to get an appointment but could not go to the clinic in person because he had COVID-19 symptoms.

32. Naujokas stated that Plaintiff would need a doctor's note and assigned eight (8) hours of vacation time for Plaintiff in Defendant's system.

33. Plaintiff completed his doctor appointment and arranged to take COVID-19 and influenza tests. Plaintiff notified Naujokas that his doctor recommended that he stay away from work until the following Monday.

34. On or about September 24, 2020, Plaintiff sent a doctor's note to Naujokas and his supervisor, Molly (last name unknown). Plaintiff did not receive a response.

35. On or about September 25, 2020, Plaintiff received the results of his tests, which both came back negative. Regardless, Plaintiff's doctor advised him to stay away from work until September 28, 2020, due to a "contagious upper respiratory virus presenting COVID-19 symptoms." Plaintiff conveyed his doctor's recommendation to Naujokas and Molly.

36. On or about September 27, 2020, Molly texted Plaintiff asking if he would be returning to work on September 28, 2020. Plaintiff told Molly that he was still experiencing symptoms including a slight fever. Plaintiff further stated that he would message his doctor but would not receive a response over the weekend.

37. On or about September 28, 2020, Plaintiff sent Naujokas a message stating that he was still sick and was awaiting a call from his doctor, so he would not be returning to work yet.

38. Plaintiff's doctor recommended that Plaintiff remain away from work due to possible bronchial pneumonia and arranged for Plaintiff to have chest x-rays taken at a hospital.

39. Plaintiff's doctor advised Plaintiff not to return to work until October 5, 2020 and that a further extension was possible depending on his symptoms.

40. On or about October 5, 2020, Plaintiff attended a doctor appointment. Due to the pandemic, the doctor examined Plaintiff outside in the parking lot.

41. Plaintiff spoke with Molly after his appointment, who told him that she would have to contact the human resources department about his absences.

42. Later that day, Plaintiff got a call from Jodianna (last name unknown) in Defendants' human resources department. Jodianna stated that she was calling to see how Plaintiff was feeling.

43. Plaintiff told Jodianna everything his doctor had told him. Jodianna then told Plaintiff to file for intermittent FMLA leave.

44. Plaintiff asked Jodianna if he should backdate the FMLA leave to September 23, 2020, when the leave initially began, to which she replied, "no, those days are gone so just file with today's date."

45. Plaintiff expressed concern over whether he would experience trouble with Defendants for not having the previous week covered, to which Jodianna stated, "[n]o worries, your job is safe."

46. On or about October 7, 2020, Plaintiff called Molly to tell her what Defendant's human resources representative had said and to tell her that he had filed for intermittent FMLA

6

leave. Plaintiff also sent Naujokas a message notifying her.

47. Plaintiff's doctor sent him another note extending his recommended leave from work until October 11, 2020.

48. On or about October 12, 2020, Plaintiff sent a message to Molly letting her know that he was still exhibiting symptoms and could not return to work yet. Plaintiff further stated that he scheduled another appointment but may need to go to the hospital for more tests due to the doctor's concern over the length and severity of his symptoms. Plaintiff never received a response from Molly.

49. Plaintiff sent Naujokas a message with the same information. Plaintiff further told Naujokas that Jodianna had instructed him to have is doctor fax the intermittent FMLA paperwork to SunLife, Defendants' third-party administrator. Plaintiff stated that his doctor had examined him prior to each extension of his time off.

50. On or about October 13, 2020, Plaintiff received paperwork from SunLife stating that his claim for FMLA leave was approved from September 23, 2020 to October 18, 2020 with a return to work date of October 19, 2020.

51. On or about October 15, 2020, Plaintiff received a call from one of Defendant's human resources representatives, who told Plaintiff that his employment was terminated effective immediately.

52. When Plaintiff asked why he was being discharged, Defendants' representative stated that it was due to an "ethics code violation," stemming from a comment posted on Plaintiff's personal Facebook page.

53. Plaintiff was confused because he had never posted anything about his employed with Defendants on his Facebook page and did not post anything that could be considered

unethical or offensive.

54. Plaintiff requested more specific information about the reasons for his firing, but Defendants' representative stated that she could not provide any further details about it. She then stated, "have a nice day," and disconnected the call.

55. Plaintiff's employment was terminated mere days after he was approved for intermittent FMLA leave, thereby raising an inference of retaliatory motivation.

56. Defendants failed to notify Plaintiff of his right to take two weeks of Emergency Paid Sick Leave under the FFCRA.

57. Defendants' purported reason for the termination of Plaintiff's employment was pretext.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

58. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 57 above as if reiterated herein.

59. Defendants intentionally discriminated against Plaintiff on the basis of his disability by terminating Plaintiff's employment due to his disability.

60. Defendant, through its employees, agents, and/or authorized representatives, knew that its retaliation, termination, and discriminatory treatment of Plaintiff violated the ADA.

61. Defendants' actions were in willful and wanton violation of Plaintiff's rights.

62. During Plaintiff's employment with Defendants and when Plaintiff was terminated by Defendants, he was subjected to discrimination, as set forth above.

63. The discriminatory treatment to which Plaintiff was subjected includes, but is not limited to, the instances alleged above. All of the actions of the individuals described herein were

undertaken in their capacities as the employees, agents, and/or authorized representatives of Defendants.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

64. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 57 above as if reiterated herein.

65. Defendants terminated Plaintiff's employment shortly after he had been approved for FMLA leave.

66. Plaintiff's discharge followed approximately two days after his request for intermittent FMLA leave was approved.

67. The acts and conduct of Defendants as aforesaid were in willful violation of the FMLA, 29 U.S.C. § 2601, *et seq.* Said statutes impose certain duties upon Defendants concerning retaliation against persons, such as Plaintiff, on the basis of their exercise of FMLA leave and the prohibition of said retaliation. Said statutes were intended to prevent the type of injury and damage herein set forth.

68. By the acts and conduct described above, Defendants were willfully in violation of said statutes, knew about, or should have known about, and failed to investigate, prevent or remedy the retaliation. The acts of retaliation described herein were sufficiently pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was retaliated against, Plaintiff's exercise of his FMLA leave was a substantial factor motivating and/or motivating reason in Defendants' conduct.

69. By the aforesaid acts and conduct of Defendants, Plaintiff has been directly and legally caused to suffer actual damages pursuant to 29 U.S.C. § 2617 including, but not limited to,

loss of earnings and future earning capacity, attorneys' fees, and other pecuniary loss not presently ascertained.

70. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable and were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiff, and were done by managerial agents and employees of Defendants and with the express knowledge, consent, and ratification of managerial agents and employees of Defendants, thereby justifying an award of punitive and exemplary damages in an amount to be determined at the time of trial.

71. As a result of the acts of Defendants as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as specifically provided in 29 U.S. C. §2617(a)(3).

**COUNT III**
**VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT**

72. Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 57 above as if reiterated herein.

73. The FFCRA has expressly identified that the qualifying reasons for Emergency Paid Sick Leave include: (1) when an employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis; and (2) when an employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.

74. Plaintiff was an eligible employee under the EPSLA.

75. Plaintiff provided Defendants with sufficient information for Defendants to determine that Plaintiff was entitled to paid leave under the EPSLA.

76. Defendants failed to provide Plaintiff with any information about his right to job-protected or paid leave.

77. Employers in violation of the FFCRA and EPSLA are subject to the enforcement provisions set forth in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216; 217.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, TIMOTHY HANSON, respectfully prays this Honorable Court enter judgment against Defendants, WORLD ACCEPTANCE CORPORATION and WORLD FINANCE CORPORATION OF ILLINOIS, as follows:

a. Declaring the Defendants' practices complained of herein unlawful and in violation of the ADA, FMLA and FFCRA;

b. Permanently enjoining Defendants, their agents, successors, officers, employees, representatives, attorneys, and those acting in concert with it or them from engaging in the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

c. Ordering modification or elimination of the practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law, ensuring Defendants will not continue to discriminate or retaliate against employees as prohibited by the ADA, FMLA, and FFCRA;

d. Immediately assigning Plaintiff to the position he would now be occupying but for the discriminatory and retaliatory practices of Defendants, and adjusting the wage rates, salaries, bonuses, and benefits for Plaintiff to those which he would have received but for the discriminatory practices of Defendants, or awarding Plaintiff front-end and future pay;

  e. Compensating and making Plaintiff whole for all earnings, wages, bonuses, and other benefits that Plaintiff would have received but for the discriminatory practices of Defendants and the willful violations of Defendants;

  f. Compensating and making Plaintiff whole for all other damages Plaintiff incurred as a result of the discriminatory and retaliatory practices of Defendants, and for the statutory and willful violations of Defendants;

  g. Awarding Plaintiff all witness fees, court costs, and other litigation costs incurred in this Action, including reasonable attorneys' fees; and

  h. Awarding Plaintiff compensatory, liquidated, and punitive damages as allowed by applicable law; and

  i. Granting such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

        RESPECTFULLY SUBMITTED,

        TIMOTHY HANSON

        By: /s/ David B. Levin
           Attorney for Plaintiff
           Illinois Attorney No. 6212141
           Law Offices of Todd M. Friedman, P.C.
           111 W. Jackson Blvd., Suite 1700
           Chicago, Illinois 60604
           Phone: (224) 218-0882
           Fax: (866) 633-0228
           dlevin@toddflaw.com